**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

UNITED STATES OF AMERICA      )
                                     )
v.                                )      Criminal No. 3:07CR322–HEH
                                       )
RAY PROSISE,                   )
                                       )
     Petitioner.                  )

## MEMORANDUM OPINION
### (Denying 28 U.S.C. § 2255 Motion)

Ray Prosise, a federal inmate proceeding *pro se*, filed this motion under 28 U.S.C.

§ 2255 ("§ 2255 Motion," ECF No. 96) to vacate, set aside, or correct his sentence. In

his § 2255 Motion, Prosise raises the following grounds for relief:

> Claim One:   Counsel rendered ineffective assistance when he refused to allow Prosise to testify on his own behalf. (§ 2255 Mot. 4; Mem. Supp. § 2255 Mot. 9–11.)

> Claim Two:   Counsel rendered ineffective assistance by failing to object to the prosecutor's improper questions to witnesses which deprived Prosise of the presumption of innocence. (§ 2255 Mot. 4; Mem. Supp. § 2255 Mot. 12–13.)

> Claim Three: Counsel failed to raise on appeal that insufficient evidence existed to convict Prosise of assault on a federal law enforcement officer. (§ 2255 Mot. 4; Mem. Supp. § 2255 Mot. at 14–17.)

On July 21, 2011, Prosise filed a Motion to Amend ("First Motion to Amend," ECF

No. 101) in which he raises the following claim for relief:

> Claim Four:   The United States engaged in prosecutorial misconduct by threatening a witness with prosecution if he failed to provide certain testimony. (First Mot. Amend 2.)

The Government has responded. (ECF No. 103.) Prosise has replied. (ECF No. 104.) The § 2255 Motion is ripe for disposition.

## I. Procedural History

A grand jury charged Prosise with conspiracy to distribute five kilograms or more of cocaine hydrochloride and fifty grams or more of cocaine base (Count One), possession of a firearm in furtherance of a drug trafficking crime (Count Two), possession of a firearm by a convicted felon (Count Three), assault on a federal officer (Count Four), and use of a communication facility in commission of a felony (Count Seven). (Second Superseding Indictment 1–4, ECF No. 36.) On April 1, 2008, a jury convicted Prosise of all five counts. (ECF No. 64) The Court sentenced Prosise to life plus sixty months in prison. (J. 2, ECF No. 80.) Prosise appealed. The United States Court of Appeals for the Fourth Circuit affirmed the judgment of this Court. *United States v. Prosise*, 367 F. App'x 423, 425 (4th Cir. 2010).

## II.     Evidence of Prosise's Guilt

Because several of Prosise's claims necessarily require a review of the evidence presented at trial, the Court now summarizes the evidence of Prosise's guilt. During trial, several cooperating witnesses testified about purchasing cocaine from Prosise. James Phillips testified that he purchased approximately seven grams of cocaine powder from Prosise about seven or eight times (Mar. 31, 2008 Tr. 51) and approximately 12 grams three or four times. (Mar. 31, 2008 Tr. 56.)

James Miles testified that he met Prosise through Javon Lee, an individual through whom he purchased cocaine. (Mar. 31, 2008 Tr. 67–69.) Miles stated that he purchased

three grams of cocaine from Lee at least "every other day" for approximately three or four years. (Mar. 31, 2008 Tr. 68.) Miles testified that he began to purchase cocaine from Prosise in 2006. (Mar. 31, 2008 Tr. 67.) Miles first accompanied Lee to Prosise's house to purchase cocaine, and Miles gave Lee money to buy the three grams of cocaine from Prosise. (Mar. 31, 2008 Tr. 71–72.) Lee also purchased a quarter ounce of cocaine using his own money. (Mar. 31, 2008 Tr. 72.) For approximately one month, Miles obtained cocaine from Prosise through Lee at least three times a week. (Mar. 31, 2008 Tr. 73–74.) After that month, Miles began to purchase cocaine from Prosise directly. (Mar. 31, 2008 Tr. 74.)

The first time Miles purchased three grams from Prosise, Prosise took the three gram bag out of a larger bag that contained a kilogram of a combination of powder cocaine and cocaine base. (Mar. 31, 2008 Tr. 74–75.) Miles explained that, generally, he observed Prosise with approximately three kilograms in his possession. (Mar. 31, 2008 Tr. 76.) Miles testified that he purchased three grams of cocaine from Prosise between fifteen and twenty times. (Mar. 31, 2008 Tr. 77.) Other times, Miles would pool his money with Lee and others to buy larger quantities. (Mar. 31, 2008 Tr. 78–79.) On approximately three occasions, he purchased one ounce quantities of cocaine base, and on four occasions, he purchased one ounce quantities of powder cocaine. (Mar. 31, 2008 Tr. 79.) On six or seven occasions, Miles purchased half-ounce quantities of a mix of cocaine base and powder cocaine, and on ten or fifteen occasions, Miles purchased seven gram quantities of an unspecified type of cocaine. (Mar. 31, 2008 Tr. 79–80.) Lee and Prosise discussed cooking the powder cocaine in front of Miles, and after Lee agreed that

3

he knew how to cook powder into cocaine base, Lee and Miles began to purchase only powder cocaine. (Mar. 31, 2008 Tr. 81.) Miles twice observed Prosise sell kilogram quantities of cocaine to other people. (Mar. 31, 2008 Tr. 82–83.) Miles testified that he observed Prosise with a firearm in his car "dozens of times" during drug sales. (Mar. 31, 2008 Tr. 86–87.)

Sean Netzel, a special agent with the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), testified that he and other agents had been investigating Prosise for drug trafficking for "some time." (Mar. 31, 2008 Tr. 147.) Netzel received information from a confidential informant ("CI") that on August 17, 2007, Prosise would be traveling from North Carolina through Emporia with a large amount of cocaine. (Mar. 31, 2008 Tr. 100–01, 151.) The agents received updates about Prosise's whereabouts throughout the night and located Prosise's green Suburban at an address on Mansion Church Road in McKinney. (Mar. 31, 2008 Tr. 101.) Eight or nine undercover vehicles set up surveillance of the house. (Mar. 31, 2008 Tr. 104.)

Prosise left the house driving the green Suburban, and traveled on Lew Jones Road behind a vehicle driven by Special Agent Michael Blackwood, of the Drug Enforcement Administration ("DEA"). (Mar. 31, 2008 Tr. 107–08, 198–99.) Two other vehicles had set up further down the road to create a roadblock, and Special Agent Sean Montgomery began to follow in his vehicle directly behind Prosise. (Mar. 31, 2008 Tr. 107–08, 198–99.) Agent Blackwood activated his lights and siren and slowed down his vehicle before he approached the roadblock vehicles in an effort to make Prosise slow down. (Mar. 31, 2008 Tr. 111, 199.) Prosise began to weave back in forth in the road in an attempt to pass

4

Agent Blackwood's vehicle. (Mar. 31, 2008 Tr. 111, 199–200.) Three officers stood outside of their vehicles fully clothed in police uniforms and vests. (Mar. 31, 2008 Tr. 200.) At this point, three undercover law enforcement vehicles in front of Prosise and two behind had their lights and sirens activated. (Mar. 31, 2008 Tr. 112.)

As Agent Blackwood stopped his car and blocked the road, Prosise appeared to be stopping. (Mar. 31, 2008 Tr. 112, 200.) Prosise instead gunned his engine and smashed into Agent Blackwood's vehicle with Blackwood inside. (Mar. 31, 2008 Tr. 112, 121, 200.) Agent Blackwood then reversed into Prosise's vehicle (Mar. 31, 2008 Tr. 216–17), and Prosise drove over an embankment and into a ditch on the left side of Lew Jones Road. (Mar. 31, 2008 Tr. 112–13, 217.) Prosise began to gun the engine and drive down the ditch. (Mar. 31, 2008 Tr. 112–13.) The ditch ended at a driveway where Officer Michael Talbert stood in front of Prosise's vehicle. (Mar. 31, 2008 Tr. 116–17, 203.) Talbert and another agent wore vests identifying themselves as law enforcement and began to yell at Prosise that they were law enforcement and to exit the vehicle. (Mar. 31, 2008 Tr. 117–19, 203.) Agent Blackwood, believing that Prosise's vehicle was stuck in the ditch (Mar. 31, 2008 Tr. 218), approached the front passenger side of the vehicle. (Mar. 31, 2008 Tr. 204.) Prosise gunned the engine again and the car rose out of the ditch in the direction of Officer Talbert. (Mar. 31, 2008 Tr. 116–17, 203.) Officer Talbert stood with his police vehicle behind him and had no avenue of retreat. (Mar. 31, 2008 Tr. 205.) Officer Talbert fired four rounds at the back rear tire as the vehicle approached him. (Mar. 31, 2008 Tr. 118, 203.) Prosise then turned to the left into the driveway. (Mar. 31, 2008 Tr. 203.)

Prosise continued at a high rate of speed down the gravel driveway into the yard. (Mar. 31, 2008 Tr. 118.) Agents Blackwood and Montgomery pursued Prosise in their vehicles and observed Prosise drive his vehicle into a pond. (Mar. 31, 2008 Tr. 124–25, 207.) While stopped in the pond, Prosise ignored the verbal commands of approximately eight to ten agents, with drawn weapons, to get out of the vehicle. (Mar. 31, 2008 Tr. 125, 127, 208.) Officers then observed Prosise ripping open little plastic bags of white powder and dumping them out his car window. (Mar. 31, 2008 Tr. 208, 211.) Prosise stayed in his vehicle for approximately five minutes until the vehicle began to sink. (Mar. 31, 2008 Tr. 126, 208.) Prosise eventually exited the car and came ashore where officers arrested him. (Mar. 31, 2008 Tr. 127, 209.) After Prosise's arrest, Agent Blackwood took a paddle boat out to the vehicle, and observed approximately ten or twelve bags containing dissolving white powder floating in the water around the vehicle. (Mar. 31, 2008 Tr. 209–11.) A police diver recovered plastic baggies and a .40 caliber Glock pistol with a scope from outside the driver's side of the vehicle. (Mar. 31, 2008 Tr. 128–29.)

A later search of the Mansion Church Road house yielded a digital scale that tested positive for cocaine residue. (Mar. 31, 2008 Tr. 175–76, 182–83.)

Bertha Prosise, Prosise's mother and co-defendant, testified that Prosise called her from jail on August 22, 2007, and asked her to go look in her vehicle, a red Galant, for what she suspected to be drugs. (Mar. 31, 2008 Tr. 230–31.) Bertha Prosise had previously observed her son and Prosise's brother, Trevawn Prosise, remove a white towel in the car, that she believed contained drugs. (Mar. 31, 2008 Tr. 238.) He left with

6

the towel and returned to give her a portion of $4000 to $7000. (Mar. 31, 2008 Tr. 238–39.)

Trevawn Prosise testified that Prosise called him from jail on August 22, 2007 to ask him to look in their mother's car. (Mar. 31, 2008 Tr. 260.) Trevawn Prosise testified that Prosise never told him what he was looking for but "[i]t was wrapped in a towel." (Mar. 31, 2008 Tr. 261.) Trevawn Prosise testified that another person told him that the towel contained drugs. (Mar. 31, 2008 Tr. 262.) Trevawn Prosise testified that he gave the towel to "Bird," who he "guess[ed]" made his money from selling drugs. (Mar. 31, 2008 Tr. 262.) Bird gave Trevawn Prosise $14,000 in exchange for the towel. (Mar. 31, 2008 Tr. 266–67.) Trevawn Prosise gave the cash to his mother. (Mar. 31, 2008 Tr. 266–67.) Trevawn Prosise also testified that Prosise made money from selling drugs and had not held a job for "a couple years." (Mar. 31, 2008. Tr. 262–63.) Trevawn Prosise also observed Prosise "cooking crack" on six occasions. (Mar. 31, 2008 Tr. 265–66.)

Michael Matthews was incarcerated with Prosise while Prosise awaited trial. (Mar. 31, 20008 Tr. 274.) Prosise told him about the day of his arrest, including that he had been tipped off that "there [were] . . . a lot of police around. And there was a roadblock around." (Mar. 31, 2008 Tr. 277.) Prosise told Matthews that "when the police tried to stop him[,] he didn't stop, he kept going. They banged up the car. . . . Tried to shoot at the tires and all that. But he kept going. He drove into a pond." (Mar. 31, 2008 Tr. 277.) Prosise stated that he knew that the people trying to stop him were police, but that he refused to stop because "he was dirty." (Mar. 31, 2008 Tr. 280.) Prosise also told Matthews that he had half a kilogram of cocaine and a .40 caliber Glock

7

that he dumped in the water. (Mar. 31, 2008 Tr. 277–78.) Prosise told Matthews that he had been selling drugs for a long time and "one time" he sold twenty kilograms that he obtained from North Carolina. (Mar. 31, 2008 Tr. 279.) Prosise also stated that agents had searched a car at his mother's home, but failed to find the drugs hidden in it. (Mar. 31, 2008 Tr. 281–82.)

Crystal Cruz testified for the defense that she was babysitting at a home next to Prosise's home on Lew Jones Road the day of his arrest. (Mar. 31, 2008 Tr. 298.) She testified that she saw a car slow down and a man "popped out of the car and started shooting." (Mar. 31, 2008 Tr. 298.) She heard no yelling or sirens and saw no lights, but noticed that the man wore a vest. (Mar. 31, 2008 Tr. 299.) As the green SUV pulled into the driveway, she saw no one standing outside the car except for the man shooting the gun. (Mar. 31, 2008 Tr. 300–01.) She testified that she observed cars pull into the yard, but she observed no markings identifying them as police. (Mar. 31, 2008 Tr. 300.)

### III.    Alleged Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first, that counsel's representation was deficient and second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

### A.    Claim One

In Claim One, Prosise faults counsel for refusing to allow Prosise to testify at trial. Prosise alleges that both prior to and during trial, he informed counsel that he wanted to testify, but that counsel refused and never advised him of his right to do so. (Mem. Supp. § 2255 Mot. 9, 11.)

Trial counsel is responsible for counseling the defendant as to his right to testify and any "tactical implications of doing so[.]" *Sexton v. French*, 163 F.3d 874, 882 (4th Cir. 1998) (citation omitted). "[T]o prove ineffective assistance of counsel based on his claim that his attorney prevented him from exercising his right to testify . . . [a petitioner] must show both that his attorney violated his right to testify and that his testimony had a 'reasonable probability' of changing the outcome." *United States v. Rashaad*, 249 F. App'x 972, 973 (4th Cir. 2007). Here, Prosise fails to demonstrate that his proffered testimony had a reasonable probability of changing the outcome of the jury trial.

Prosise argues that had he testified in his own defense he would have testified: (1) that he never sold drugs to Phillips; (2) "that he did not sell crack cocaine, and that he only sold powder cocaine in three gram amounts" and no conspiracy existed but only buyer/seller relationships; (3) that he lacked the requisite intent for assault on a federal

officer because "at first [he] did not know that the cars following [him] were police;" and, (4) he never discussed his case with Matthews while incarcerated, but Matthews obtained the information from Prosise's legal papers. (Mem. Supp. § 2255 Mot. 11; *see* Affidavit of Ray Prosise ("Prosise Aff.") 1–2, ECF No 96–1).

Despite Prosise's statements that he never sold drugs to James Phillips, never sold crack cocaine, but only three gram quantities of powder cocaine, and that no conspiracy existed, but only buyer/seller relationships, overwhelming evidence demonstrated the contrary. Numerous witnesses testified to Prosise's drug trafficking activity stemming back, at least, to 2006. Cooperating witness James Miles testified that he observed Prosise with cocaine base on more than one occasion and that he witnessed a conversation in which Prosise and his colleague discussed cooking powder cocaine into cocaine base. Trevawn Prosise testified that he observed his brother cooking powder cocaine into cocaine base approximately six times. Trevawn Prosise also testified that Prosise sold drugs and had not held a job in several years. Trevawn Prosise further testified about Prosise's continued drug trafficking after his incarceration. Cooperating witnesses Phillips and Miles explained that they purchased between three grams and one half-ounces of powder cocaine, and Miles testified he purchased crack cocaine from Prosise on numerous occasions. Miles also observed Prosise sell someone a kilogram of powder cocaine. Matthews explained that Prosise told him that he had been selling drugs for a long period of time and obtained cocaine from North Carolina.

To the extent Prosise argues that no conspiracy existed, but rather only buyer/seller relationships, the Government presented overwhelming evidence to establish

that Prosise engaged in a conspiracy to distribute cocaine hydrochloride and cocaine base. The Government established that Prosise sold cocaine to at least three individuals, some of whom bought up to one ounce quantities from Prosise three times a week, thus, permitting the logical inference that Prosise knew that the individuals were purchasing the cocaine for further distribution. Prosise also used his mother's vehicle to hide cocaine, and enlisted both his brother and mother to deliver a hidden package of drugs to a known drug dealer in exchange for $14,000 after his incarceration. Moreover, Prosise had been selling cocaine for at least four years prior to his arrest. On one occasion, Prosise purchased at least twenty kilograms of cocaine from a distributor in North Carolina, and a reasonable inference could be drawn that, based on the large quantity Prosise purchased, the distributor likely knew that Prosise would distribute the drugs. *See United States v. Muhammad*, 337 F. App'x 349, 351 (4th Cir. 2009) (finding similar factors sufficient to demonstrate existence of a conspiracy). Thus, Prosise fails to demonstrate a reasonable probability that his proffered testimony would change the outcome of trial.

The evidence presented at trial also clearly dispels Prosise's contention that he lacked the requisite intent to assault a federal officer because "at first [he] did not know that the cars following [him] were police." (Prosise Aff. 2.) Contrary to Prosise's assertion, the evidence demonstrated that Prosise knew that the individuals who tried to stop him were law enforcement officers. Numerous law enforcement agents and Prosise's pod mate, Matthews, testified consistently about Prosise's attempts to evade arrest for the drug conspiracy and his assault on a federal officer. Matthews testified that

Prosise had received a tip about the roadblock and law enforcement near his house. When Agent Blackwood attempted to stop Prosise's car, Prosise hit Blackwood's vehicle. At this point, at least five vehicles had sirens and lights activated. The agents testified that they each wore a vest identifying them as law enforcement. While Prosise was in the ditch, several agents shouted verbal commands for Prosise to exit his car. Instead of obeying the agents' commands, Prosise drove his car out of the ditch in the direction of Officer Talbert, who was standing near the front of Prosise's car. Officer Talbert quickly fired four shots in Prosise's back tire and moved out of the path of his car. Matthews also testified that Prosise told him that he was aware that the people trying to stop him were police. Prosise explained that he had drugs in his vehicle and he wanted to remove them from his car.

For similar reasons, Prosise's proffered testimony that he never discussed the events leading to his arrest with Matthews had no reasonable probability of changing the outcome of trial. Matthews provided an account consistent with law enforcement about the events leading to Prosise's arrest, consistent with the cooperating witnesses about Prosise's involvement in the drug conspiracy, and consistent with Bertha and Trevawn Prosise's accounts about Prosise's continued attempt to distribute drugs after his incarceration.

Prosise fails to demonstrate that, but for counsel's purported errors in refusing to allow Prosise to testify, a reasonable probability existed of a different result at trial if the jury had heard Prosise's proffered testimony. Accordingly, Claim One will be dismissed.

### B.     Claim Two

In Claim Two, Prosise faults counsel for his failure to object to the Government's alleged improper questioning of witnesses Trevawn Prosise and Michael Matthews, which "deprived Prosise of the presumption of innocence." (Mem. Supp. § 2255 Mot. 12 (emphasis omitted) (capitalization corrected).) Specifically, Prosise contends:

> During its direct examination of Trevawn Prosise the Prosecutor asked if Prosise told him that he "thought he was going to get convicted." Trevawn Prosise stated that Prosise "did not think he was going to get out . . . but he wanted to see who was testifying." TR. 268. In addition, the prosecutor asked Michael Mathews did Prosise tell him why he was going to trial. Mathews responded that Prosise told him "he was going to trial because he didn't have anything, just had people that were saying stuff and he felt his lawyer could discredit [them]."

(*Id.* at 12 (alteration in original) (omission in original).)  Prosise claims this testimony "allowed the jury to infer that Prosise elected to proceed with a trial simply to find out who was cooperating with authorities" and "suggested that Prosise . . . knew that he would be found guilty and that the trial was a mere formality." (*Id.* at 13.)

First, Prosise's claim that counsel failed to object to the above-questioning of Trevawn Prosise lacks factual merit.  During trial, the prosecution asked Trevawn Prosise: "Did he tell you he thought he was going to get convicted?" (Mar. 31, 2008 Tr. 268.) Defense counsel objected, and the Court sustained the objection. (Mar. 31, 2008 Tr. 268.) The prosecution then asked: "Did he make any comments to you about wanting to see witnesses?" (Mar. 31, 2008 Tr. 268.) Counsel objected, but the Court overruled the objection, finding the answer admissible. (Mar. 31, 2008 Tr. 268.) Thus, counsel clearly objected to both of the prosecutions questions posed to Trevawn Prosise.

Second, Prosise fails to demonstrate any prejudice from counsel's failure to object to the prosecution's questioning of Matthews. The prosecutor asked Matthews: "Did he tell you why he was going to trial here today?" (Mar. 31, 2008 Tr. 281.) Defense counsel posed no objection, and Matthews responded: "Yes. He said he was going to trial because he didn't have anything, just had people that were saying stuff and, you know, he felt like his lawyer could discredit these people." (Mar. 31, 2008 Tr. 281.) While counsel lodged no objection to the prosecution's question to Matthews about why Prosise had decided to go to trial, in light of the overwhelming evidence of Prosise's guilt, he fails to demonstrate any prejudice. Moreover, Matthews's answer only suggests that Prosise believed that he could fight the charges, a presumption already obvious from Prosise's decision to plead not guilty and go to trial. Claim Two lacks merit and will be dismissed.

### C.    Claim Three

In Claim Three, Prosise argues that counsel rendered ineffective assistance when he failed to raise on appeal that insufficient evidence existed to convict Prosise of the assault on a federal law enforcement officer.[1] Prosise contends that the evidence was insufficient to show that Prosise intended to forcibly assault a federal officer and "more significantly, that there was even an assault . . . ." (Mem. Supp. § 2255 Mot. 15.) He argues that "the evidence shows, at most, that Prosise simply tried to avoid being arrested." (*Id.* at 15.)

---

[1] The Court notes that Prosise's Memorandum in Support, if read alone, appears to raise a claim of insufficiency of the evidence. Nevertheless, in his § 2255 Motion, Prosise clearly brings Claim Three as a Sixth Amendment ineffective assistance of appellate counsel claim.

"In order to establish a claim that appellate counsel was ineffective for failing to pursue a claim on direct appeal, the applicant must normally demonstrate" that appellate counsel performed deficiently and that a reasonable probability of a different result exists. *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (citing *Strickland*, 466 U.S. at 688, 694). A presumption exists that appellate counsel "'decided which issues were most likely to afford relief on appeal.'" *Id.* (quoting *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993)). "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.'" *Id.* (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000)). Counsel had no obligation to assert all non-frivolous issues on appeal. Rather, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). Prosise fails to demonstrate the clear strength of the challenges to his assault on a federal officer conviction he urges here, as compared to the stronger grounds pursued by counsel.[2] Thus, Prosise establishes no deficiency of counsel. Accordingly, Claim Three will be dismissed.

---

[2] On appeal, counsel argued that the Court erred in denying the motion to suppress the evidence taken from Prosise's person or car after the high speed chase and the roadblock that forced his car to stop, erred in imposing a firearm enhancement at sentencing, and erred in imposing an obstruction of justice sentencing enhancement. *United States v. Prosise*, 367 F. App'x 423, 427–31 (4th Cir. 2010.)

## IV.    Prosecutorial Misconduct

### D.    Claim Four

In Claim Four, Prosise argues that the Assistant United States Attorney engaged in prosecutorial misconduct by threatening witness Trevawn Prosise with prosecution if he failed to provide certain testimony.  (First Mot. Amend 2.)  Specifically, Prosise claims that Trevawn Prosise, in July 2011, recanted his testimony from trial about whether or not he knew that the towel he found in Prosise's mother's car contained cocaine.  (First Mot. Amend 2.)

A conviction acquired through the knowing use of perjured testimony by the prosecution violates due process.  *Napue v. Illinois*, 360 U.S. 264, 269 (1959).  To prove a violation of due process based on false testimony, a petitioner must demonstrate his conviction was "obtained through use of false evidence, known to be such by representatives of the State."  *Napue*, 320 U.S. at 269 (citations omitted); *see United States v. Tanner*, 61 F.3d 231, 236 (4th Cir. 1995) (requiring a defendant to prove "the prosecution knew or should have known at trial" that testimony was false in order to establish a due process violation (citing *Napue*, 360 U.S. at 269)).  "The knowing use of perjured testimony constitutes a due process violation when 'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'"  *United States v. Demery*, 158 F. App'x 521, 523 (4th Cir. 2006) (quoting *United States v. Agurs*, 427 U.S. 97, 103 (1976)).

During trial, Trevawn Prosise testified that Prosise never told him what he was looking for, but "[i]t was wrapped in a towel" and that another person told him that the

towel contained drugs. (Mar. 31, 2008 Tr. 261–62.) Prosise gave the towel to "Bird,"

who he "guess[ed]" made his money from selling drugs. (Mar. 31, 2008 Tr. 262.) Bird

gave Trevawn Prosise $14,000 in exchange for the package which he gave to his mother,

Bertha Prosise. (Mar. 31, 2008 Tr. 266–67.) Prosise now provides an affidavit of

Trevawn Prosise,[3] filed three years after trial, stating the following:

> Prior to Ray Prosise's trial, I was interviewed by the Assistant
> United States Attorney regarding a package I removed from the Gallant
> parked at my mother's residence. The Assistant United States Attorney
> asked me what was in the towel that I removed from the vehicle. I
> explained that I did not know what was wrapped in the towel, and that all I
> did was give the towel to someone in exchange for money.
> The prosecutor told me that if I was lying, I would be charged with
> drug conspiracy and that I would be facing 10 years to life in [f]ederal
> prison. I again stated that I did not know what was wrapped in the towel.
> The prosecutor then stated that it was in my best interest to suggest it was
> cocaine. The prosecutor said that the government knew it was cocaine and
> that because I gave the wrapped towel to someone in exchange for money, I
> would be considered a conspirator in a court of law.    After this
> conversation, I agreed to suggest that cocaine was wrapped in the towel.
> I did not know what was wrapped in the towel.  All I knew was that I
> was suppose[d] to give the towel to this guy in exchange for money, and
> that I was to give the money to my mother, Bertha Prosise.

(First Mot. Amend. Ex. A, at 1 ("T. Prosise Aff.")).

Whether or not the prosecutor knew that Trevawn Prosise testified falsely about

whether he knew the towel contained cocaine, no reasonable probability exists that the

false testimony would have affected the jury's verdict.[4] *See Demery*, 158 F. App'x at

523. The jury heard testimony from three cooperating witnesses about Prosise's lengthy

---

[3] While the affidavit is signed by Trevawn Prosise, the similarity in type font suggests that Prosise prepared the document.

[4] The Assistant United States Attorney who prosecuted the case avers that the allegation that "I told [Trevawn Prosise] it was in his 'best interest to suggest it was cocaine' . . . is patently false." (Gov't Resp. § 2255 Mot. Attach. B, at 1.) The Court expresses doubt that the prosecutor knowingly elicted false testimony.

involvement in trafficking voluminous amounts of powder cocaine. After dangerously evading police, two officers testified that they observed Prosise dumping a white powdery substance out of bags into the lake. Police recovered plastic bags that floated around Prosise's truck and a scale at the home Prosise had just left prior to his arrest. Prosise admitted to his cell mate that he evaded police because he had half a kilogram of cocaine and .40 caliber Glock in his vehicle that he dumped in the pond. Moreover, even without Trevawn Prosise's statement that some unidentified individual "said that it was drugs" (Mar. 31, 2008 Tr. 261), a reasonable jury would have drawn the inference that the towel contained cocaine in light of the evidence of Prosise's drug trafficking activities, the fact that Trewawn Prosise testified that he gave the package to a known drug dealer and received $14,000 in return, and the fact that Trevawn Prosise knew that Prosise sold drugs and had not held a job in several years. Because Prosise fails to demonstrate that Trevawn Prosise's testimony about the contents of the towel affected the outcome of trial, Claim Four will be dismissed.

## V.   Motions to Amend

"Under Rule 15(a) leave to amend shall be given freely, absent bad faith, undue prejudice to the opposing party, or futility of amendment." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000) (citations omitted). As explained below, Prosise's amendments are futile.

### A.   Second Motion to Amend

On April 18, 2013, Prosise sought permission to amend his § 2255 Motion to add seven new claims. ("Second Motion to Amend," ECF No. 105.) The Court appropriately

denies as futile leave to amend when the statute of limitations bars the new claims. *See*

*Ingram v. Buckingham Corr. Ctr.*, No. 3:09CV831, 2011 WL 1792460, at *1 (E.D. Va.

May 5, 2011). As discussed below, the statute of limitations bars Prosise's claims in his

Second Motion to Amend.

### 1. Statute of Limitations

Section 101 of the Antiterrorism and Effective Death Penalty Act ("AEDPA")

amended 28 U.S.C. § 2255 to establish a one-year period of limitation for the filing of a

§ 2255 Motion. Specifically, 28 U.S.C. § 2255(f) now reads:

> **(f)** A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
>
> > **(1)** the date on which the judgment of conviction becomes final;
> >
> > **(2)** the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> >
> > **(3)** the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > **(4)** the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

Prosise's conviction became final on Thursday, May 27, 2010, the last day upon

which he could file a petition for a writ of certiorari with the Supreme Court. *See* 28

U.S.C. § 2255(f)(1). Prosise then had one year, or until Friday, May 27, 2011, to file a motion pursuant to 28 U.S.C. § 2255. 28 U.S.C. § 2255(f).

On April 14, 2011, Prosise filed his § 2255 Motion within the statute of limitations. (§ 2255 Mot. 6.)[5] Prosise filed his Second Motion to Amend on April 18, 2013, nearly three years after his conviction became final. (Second Mot. Amend. 23.) Because Prosise failed to file his Second Motion to Amend within the one-year limit, the statute of limitations bars the proposed amended claims unless Prosise demonstrates: entitlement to a belated commencement of the limitations period under 28 U.S.C. § 2255(f)(2)–(4); entitlement to equitable tolling, *see United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (quoting *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003)); or, that the new claim relates back to the claims in the § 2255 Motion, *see Pittman*, 209 F.3d at 317.

### 2.    Belated Commencement

Prosise provides no argument for belated commencement or equitable tolling. Instead, Prosise simply provides argument for his six new claims of ineffective assistance of counsel and one claim of prosecutorial misconduct. Prosise's new claims are as follows:

I.     Counsel failed to file motions to suppress the affidavit in support of the search warrant of certain residences. (Second Mot. Amend 7.)

II.    Counsel failed to call a material witness at trial to question him about the search warrant application. (*Id.* at 13.)

---

[5] The Court deems an inmate's motion filed on the date it is handed to prison staff for mailing. *Houston v. Lack*, 487 U.S. 266, 276 (1988). Here, Prosise fails to provide this date. Instead, the Court uses the date Prosise signed the motion as the date of filing.

III.   Counsel failed to call a cooperating witness at trial to challenge the information she provided to law enforcement in connection with obtaining a search warrant. (*Id.* at 14.)

IV.   The prosecutor failed to turn over material evidence of "interviews, proffers, police reports etc. of cooperating informant, or police reports of controlled purchases, or debriefing information . . . ." (*Id.* at 15.)

V.   Counsel failed to call Javon Lee to testify at trial who "would have testified whether or not James Miles was correct or in fact false" that Lee introduced Prosise to Miles and Prosise sold Miles drugs daily. (*Id.* at 16.)

VI.   Counsel failed to call a second material witness at trial to question about the search warrant application. (*Id.*)

VII.   Counsel failed to object to the career offender enhancement at sentencing. (*Id.* at 17.)

A review of Prosise's submissions indicates that his new claims attack his criminal proceedings, which concluded prior to the filing of his § 2255 Motion. Prosise fails to provide any argument as to why, acting with due diligence, he could not have discovered the facts supporting these claims within the one-year limitations period. Moreover, neither Prosise nor the record suggests circumstances that warrant equitable tolling. Because Prosise fails to demonstrate any meritorious grounds for belated commencement or equitable tolling, the statute of limitations bars the amended claims unless the claims relate back to a claim in the original § 2255 Motion.

### 3.   Relation Back

Courts apply Rule 15 of the Federal Rules of Civil Procedure to motions to amend in a § 2255 case. *Pittman*, 209 F.3d at 317. Rule 15 allows for amendments to the § 2255 motion filed after the one-year statute of limitations, provided the amendment relates back to the original timely filed motion. A claim relates back if it "arose out of

21

the conduct, transaction, or occurrence set out—or attempted to be set out—in the

original pleading." Fed. R. Civ. P. 15(c)(1)(B).

An amended claim "does not relate back (and thereby escape AEDPA's one-year

time limit) when it asserts a new ground for relief supported by facts that differ in both

time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644,

650 (2005). In this regard, it is not sufficient that the new claim simply "has the same

form as the original claims," if the new claim "arises out of wholly different conduct."

*Pittman*, 209 F.3d at 318. Thus, "a petitioner does not satisfy the Rule 15 'relation back'

standard merely by raising some type of ineffective assistance in the original petition, and

then amending the petition to assert another ineffective assistance claim based upon an

entirely distinct type of attorney misfeasance." *United States v. Ciampi*, 419 F.3d 20, 24

(1st Cir. 2005) (citing *Davenport v. United States*, 217 F.3d 1341, 1346 (11th Cir. 2000);

*United States v. Duffus*, 174 F.3d 333, 337 (3d Cir. 1999)).

In his original § 2255 Motion, Prosise raised three claims of ineffective assistance

of counsel, including a claim that his counsel failed to permit Prosise to testify,[6] that

counsel failed to object to certain questions asked by the Government of witnesses, and

that counsel failed to raise on appeal that insufficient evidence existed for the assault on a

federal officer conviction. Prosise failed to allege any ineffective assistance claims

---

[6] Prosise proffered that he would have testified during trial that he only used drugs with cooperating witness Philips and that he had only a buyer/seller agreement with Miles, Lee, and Philips. (§ 2255 Mot. 17.) He made no proffer relating to discrediting Miles's trial testimony that Lee introduced Miles to Prosise or that Miles bought drugs daily as Prosise raises in Amended Claim V. To the extent any similarity exists, permitting Prosise to amend to add Claim V would be futile, as Prosise proffers no concrete evidence that Lee's testimony would be exculpatory, only that he may or may not discredit Miles. *See United States v. Terry*, 366 F.3d 312, 316 (4th Cir. 2004) (requiring "concrete evidence" of exculpatory nature).

pertaining to counsel's failure to file a suppression motion, failure to call witnesses to challenge the search warrant, failure to call Javon Lee, failure to challenge to his sentence, or a claim that the prosecution failed to turn over evidence. Thus, the proposed amended claims fail to relate back to Prosise's original claims because the new claims "arise from separate occurrences of 'both time and type.'" *Pittman*, 209 F.3d at 318 (quoting *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999)); *see Mayle*, 545 U.S. at 659 ("[R]elation back depends on the existence of a common core of operative facts uniting the original and newly asserted claims.") (internal quotation marks omitted) (citing Fed. R. Civ. P. 15(c)(2)); *United States v. Hernandez*, 436 F.3d 851, 857–58 (2006). Accordingly, Prosise's Second Motion to Amend (ECF No. 105) is untimely and will be denied.

### B.    Third Motion to Amend

On June 6, 2013, Prosise filed a "MOTION TO SUPPLEMENT FED. CIV. R. P. (15)(d)." ("Third Motion to Amend," ECF No. 106.) In his Third Motion to Amend, Prosise seeks to add a claim that, based on the recent case *Alleyne v. United States*, 133 S. Ct. 2151 (2013), he had a right to have a jury find beyond a reasonable doubt that the appropriate drug weight attributable to him, whether or not the obstruction of justice and role as an organizer sentencing enhancements applied, and whether or not he was a career offender.

In *Alleyne*, the Supreme Court addressed a defendant's mandatory minimum sentence of seven years for brandishing a firearm under to 18 U.S.C. § 924(c)(1)(A)(ii). 133 S. Ct. at 2155–56. The Supreme Court held "that facts that increase [statutory]

mandatory minimum sentences must be submitted to the jury." *Id.* at 2163.

Nevertheless, the Supreme Court emphasized that its ruling did "not mean that any fact

that influences judicial discretion must be found by a jury." *Id.* Prosise lacks entitlement

to relief under *Alleyne* as it has no impact on sentencing enhancements that affect only

the advisory guidelines calculation. *United States v. Richmond*, No. 13–4705, 2014 WL

818936, at *1 (4th Cir. Mar. 4, 2014) (unpublished) (explaining that *Alleyne* "did not

disturb judicial factfinding at sentencing for facts that do not impact the statutory

punishment" (citing *Alleyne* 133 S. Ct. 2163)). Prosise's sentence was the product of the

advisory sentencing guidelines rather than a statutory mandatory minimum sentence.

Therefore, Prosise fails to demonstrate that he can mount a meritorious claim based on

the decision *Alleyne. See id.* Accordingly, the Third Motion to Amend (ECF No. 106)

will be denied as futile.

**C.     Fourth Motion to Amend**

On May 12, 2014, Prosise filed a "REQUEST FOR LEAVE TO AMEND

AND/OR SUPPLEMENT PETITIONER'S §2255 MOTION, PURSUANT TO FED. R.

CIV. P. 15." ("Fourth Motion to Amend," ECF No. 107.) Prosise seeks to add a claim

contending that the recent United States Court of Appeals for the Fourth Circuit's

decision, *Whiteside v. United States*, 748 F.3d 541 (4th Cir. 2014), "necessitates the

retrospective application of *Alleyne v. United States* . . . ." (Proposed Amend. 1, ECF No.

107–1 (capitalization corrected).) As discussed above, whether or not *Alleyne* applies

retroactively to cases on collateral review, *Alleyne* has no applicability to Prosise's

24

advisory guidelines sentence. *See Alleyne*, 133 S. Ct. at 2163; *Richmond*, 2014 WL
818936, at *1. Prosise's Fourth Motion to Amend (ECF No. 107) will be denied as futile.

## VI.    Conclusion

The § 2255 Motion (ECF No. 96) will be denied. The action will be dismissed. A
certificate of appealability will be denied.[7]

An appropriate Final Order will follow.

                                    _____/s/_____
                                    HENRY E. HUDSON
                                    UNITED STATES DISTRICT JUDGE

Date: June 27, 2014
Richmond, Virginia

---

[7] An appeal may not be taken from the final order in a § 2255 proceeding unless a judge
issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(B). A COA will not issue
unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C.
§ 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different manner or
that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v.
McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4
(1983)). Prosise has not satisfied this standard.